The first case today is number 221882-231315-231322, United States v. Louis D. Coleman III. Will counsel for appellant please come up and introduce yourself on the record to begin. Good morning and may it please the court. I'm Chrissy DeMasso and I represent Louis Coleman. I'd like to reserve three minutes for rebuttal. You may. Thank you. Mr. Coleman was charged with kidnapping resulting in death. One of the main questions at trial and on appeal is whether the government proved that he committed this specific federal crime. In this argument I would like to focus on three issues that relate to this question. First, the argument about the presentment clause. At trial the government violated the Fifth Amendment presentment clause by relying on a theory of sexual gratification that was not presented to the grand jury and it used this theory to satisfy the purpose element of this offense. Second, the indictment itself was insufficient and violated Mr. Coleman's rights, leaving the government free to pursue a wide range of divergent theories without giving him notice. And the third issue I'd like to focus on today is that the government did not present sufficient evidence to establish the elements of this offense, specifically focusing on the holding element of this offense, beginning with the presentment clause. This court has held that the ransom, reward, or otherwise portion of the statute... Excuse me. On holding, is the focus on whether there was any holding at all or whether the holding was for an appreciable period? There are two elements to our holding argument. The first is whether the hold was appreciable and then the second is the piece about whether a hold needs to be appreciable in addition to any holding inherent in another offense. Okay. Thank you. Yes. We're just returning to the... Would you like me to continue on the hold or return to the presentment clause? Returning to the presentment clause. So ransom, reward, or otherwise purpose is an element in the First Circuit of this offense. At trial, the government argued that the purpose was that Mr. Coleman had a purpose of sexual gratification. No evidence of this purpose, whether it be of sexual assault or of sex at all, was presented to the grand jury. The government suggests that this court looked at the search warrant affidavit as sort of a proxy for what information it had at the time of the indictment and what it may have  The government also, in its brief and below, cited the evidence that it believes shows that Mr. Coleman acted for sexual gratification. The evidence that it cites now to support a theory of sexual gratification was not contained in the search warrant affidavit. So not only do we know that evidence of sexual assault could not have been presented to the grand jury because they did not yet have the DNA results at the time of the indictment, there's also the fact that the information in that search warrant affidavit simply does not support an inference of sexual gratification. So if we're using that as a proxy, for example, now they say that the evidence of Mr. Coleman's conduct earlier that night with Ms. Horace, that that's indicative of his purpose of sexual gratification. That information was not in the search warrant affidavit, suggesting it was also not presented to the grand jury. It also talks about, if you look at the search warrant affidavit, there's a point in the search warrant affidavit where they mention that part of what they're looking for is evidence of a prior relationship between Ms. Correa and Mr. Coleman, suggesting that it didn't in fact know what the purpose was, that it was searching to find out what had happened here and what caused the actions. The reason that this doesn't look exactly like a constructive amendment claim is because the indictment is so vague and broad. And the indictment leaves open a huge breadth of possible theories. It leaves open theories meaning anything from Mr. Coleman met Ms. Correa on the street, lied to her, they went together, and her death resulted sometime close in time to that in Massachusetts. But the indictment also permits the government to advance on a theory that things were consensual for quite a long period of time until perhaps later there was an unrecorded physical seizure and that her death didn't result until many days later in Rhode Island. This is what the indictment leaves open. So where the indictment leaves this breadth open, we don't know, you know, there's no – the government at one point in its brief suggests that if it had pled one purpose and then had proved another at trial, that that would be a constructive amendment. And here, we don't have those facts because the government simply left everything so open. It left itself free to pursue any theory. So here we have an indication that the grand jury did not proceed on a theory of sexual gratification. And that is what the government proceeded on at trial. That mismatch violates the presentment clause. And it does not require looking at what was before the grand jury. It does not require considering whether the grand jury had sufficient evidence for the caliber either. It doesn't require looking at whether the evidence before the grand jury could have supported a finding of probable cause. Counsel, I know you focus on the purpose element, that that's the key thing that you think was missing in the indictment, but has any appellate court held that an indictment actually has to specify a purpose in order to be sufficient? So turning to the indictment, the first thing I would like to say is that when it comes to indictment insufficiency, it doesn't specify any of the key elements. It doesn't specify the hold, the seizure, or the purpose. The purpose element is quite central when it comes to the presentment clause argument. But when it comes to the indictment insufficiency argument, what matters is really that it didn't specify on any of those three metrics, the hold, the seizure, or the purpose. And the cases that the government points to that held that an indictment need not allege purpose are contrary to this court's holding in Calderon, which did hold that that purpose is an element, that ransom, reward, or otherwise is an element. So given that case law, that did need to be fled. But yes, the indictment- But counsel, that doesn't answer Judge Reichelman's question. Has any appellate court held that an indictment is constitutionally insufficient if it doesn't allege the purpose? I don't have a case with those facts, but I do think that Calderon leads inexorably to that conclusion. If it is an element, it must be fled. And Calderon very clearly states that the reward, ransom, or otherwise is an element. The indictment used the language of the statute, we agree, correct? Yes, it did track the statute. All right. And there is a lot of law out there that if the indictment does that, and if later you get sufficient notice of the more particular ways in which the elements were accomplished, that that satisfies the Constitution. So you seem to be asking us to abandon that well-established case law. I don't think the insufficiency requires abandoning any case law. I think that the cases that talk about- Why is that an unconstitutional indictment? The cases that talk about indictments can be sufficient if they track the statutory language, all acknowledge that that may not be sufficient, that there may be instances where that is not sufficient. And here, given the huge breadth of theories that this indictment left open, given that it didn't specify on any of those three elements, the holding, the seizure, or the purpose, given that vast breadth, there simply was not sufficient notice here. And the government was going to leave things open as much as possible, even towards the end of trial. You see the government saying that it was going to argue that she was at least unconscious when they got to Rhode Island. Okay. Could I turn you to your third argument, please? Yes. Moving to the holding. So, as I answered before, the holding needs to be both appreciable, and it also needs to be appreciable beyond any holding inherent in another offense. All of the circuits that have considered the appreciable hold have agreed that the holding does need to be appreciable. And if I sort of focus, without looking at the other tests, kind of the Barry test, just for a moment on just appreciable, this holding was not appreciable. You know, there are lots of ways to think about how long this holding was, sort of laid that, I attempted to lay that out in a chart in my brief to try to give some clarity to that. But even if you consider this to be, on the government's theory, that sort of a 27-minute holding from kind of the moment that they meet all the way until the end of that 12-minute stop on Tremont Street, this holding was still not appreciable. I do think- I'm sorry. Which? 27 minutes is not, or 12 minutes is not? Even 27 minutes is not. I don't think any length of holding in this case is appreciable. Is that because of the absolute length of the holding or because of the second part of your argument, which is that you have to subtract out the length that it took to, for your client to, you know, arguably commit the other crimes? It depends on the second part of your argument, right? You're not arguing the 27 minutes per se. I'm arguing both. You're arguing both? Even if we're looking at the 27 minutes, even if we're sort of in that, for my case, worst case scenario. But without- Let's just assume for a moment that we disagreed with your argument that we have to subtract out the time that it takes to commit any underlying offense like sexual assault. Is your position that 27 minutes per se is not enough to be a hold as a matter of law? It doesn't have to be per se as a matter of law. I think the 27 minutes in this case is not sufficient. And that also- What does that mean? What do you mean, the 27 minutes in this case? I think you have to look at the holding and the facts of each case independently. I don't think it needs to be a strict time number for what's appreciable and what's not. And I think that Cardozo, the District of Columbia case, helps in that respect. Even though it's sort of talking about the incident, it talks about, you know, it doesn't set a strict timeline. It says sort of anything less than 30 minutes is typically not a holding, and anything more than an hour typically is. What I think is also useful that that court does is talks about when you have cases in the middle, you can look for kind of indicia of kidnapping. And it talks about transportation for significant distance, which we don't have here. They move, but ultimately, where they initially get in his car to where the 12-minute stop on Tremont is about half a mile apart, they only drive for a mile. The Cardozo case also talks about looking at whether there was ransom. I'm sorry, that doesn't make sense to me. Suppose the car doesn't move at all, but the victim is held in the car under duress, physical, emotional, has gotten there by deceit. Why does it matter whether the car has moved or not? That just strikes me as an untenable rule. This is why I think it's important to look at the facts of each case. Well, yes, I just gave you the facts of this case. The, you know, Cardozo is listing possible indicia that could be looked at. It's not... Okay, so move from whether the car has moved a distance to whatever comes next. So yes, Cardozo suggests possible indicia. One is movement. One is whether there was ransom, which we don't have here. Another possible one could be whether the victim is additionally sort of bound or restrained, and we don't have that, those sort of facts here. So and also when we're looking at the 27 minutes, I also want to say, you know, apart from separating off the 12 minutes, there's also the question of kind of the six minutes of the walk. Whether that can actually be a holding. Quite apart from the question of whether a holding can ever be by deceit. That question sort of doesn't matter for the argument that I'm making, which is simply that in these circumstances, the walk, which it does six of that 27 minutes, that walk cannot be a holding. Counsel, can I ask you about that? I saw that argument in your brief. I'm just wondering why that is the case. Again, if we look at the facts here, which, you know, looking in the light most favorable to the jury verdict, it's a woman who's intoxicated and barefoot in the cold and, you know, arguably is being taken advantage of. Why? Why is that not enough to consider her being sort of held? And the other thing I wonder, sorry, it's a two-part question, is does it matter that she's an adult? In other words, would you be making this argument if this was a minor that was being led away to a car? Could you just address that? We're happy to give you more time. Okay, thank you. I think initially I would suggest that, you know, the videos don't show being led away as sort of a correct characterization. You know, as the events are happening with the Uber driver, Ms. Correa is interacting with sort of multiple people, someone else comes up and that person goes away. She talks to some people who walk by. Mr. Coleman comes up and he reaches out a hand and she takes his hand and she goes with him. And you see that she is not, I mean, neither of them on the videos appear sort of like noticeably intoxicated. There's not kind of like a stumbling and supporting each other. You see them walk together. You don't see pulling and tugging. You see her get… I guess I'm just, again, we have to look at the evidence in the light most favorable to the verdict. And I believe the evidence was that she was intoxicated based on an actual test that was done. And, you know, you could, a jury could interpret it as her being led away because she's intoxicated and in a vulnerable situation. So if you just assume those facts for a moment, why can't the walk, you know, is there anything else you can tell me about why the walking cannot be a hold? I think you see a lot of actions that she is taking on her own. She chooses to get on his back. You see her jump up. You see her kind of start to like, he doesn't quite get her the first time. You see her kind of start to fall off and she pulls herself back on. You know, when they get to his car and there's still lights going, there's still cars around, there's still people getting, there's people who get in the car, parked a few steps behind them. You see her get in the car herself. You see him move around the other side of the car. You see her shut the door of the car herself. So kind of until you get to that point, she is taking a lot of actions herself. That you see as signs of voluntariness is basically what you're saying. Yes. I think Judge Rickleman is asking a question about the proper interpretation of the statute. The kidnapping has to start, well at least on the facts here, on some form of deceit or deception to lure the victim in. When the luring starts, as a statutory matter, is there any reason to think that the hold can't start at the time the luring starts? Do you have any cases that say that? I mean, I cited in my brief, if you look at the cases, a lot of them start with a fact pattern where someone is being lured into a car. And they do talk about the holding starting in the car. This is not sort of an unusual, that piece of it is not entirely unusual. No, that wasn't my question. My question was, do you have any cases saying that the holding element has to be timed differently than the luring, which starts the kidnapping? I don't think it does have to be. And the statute makes no such distinction. I don't think that it has to be timed differently, but I think in this case it was timed differently. Okay, thank you. Dr. Salia, do you have any additional questions?  Thank you, counsel. Will attorney for Eppley please come up and introduce yourself on the record to begin? Ernest Mayheff, police department, on behalf of the government. I'll start with the last issue of the holding and the point that was made about whether the luring, the walking, can count towards it, because I think it's an important part of this case. The government's theory was certainly that it did. They argued that the hold and the seizure happened at the same time outside of the room when she was deceived, led to believe that she would be taken home and that she was deceived from that point on. And I think the cases are in accord that you can hold by deception. I think there's a little bit of a difference in whether you have to intend to back it up with force, but there's no disagreement that a deception can convince a hold as well as being a form of seizure, so that's a theory that's consistent with the statutory. What's the best case on that, do you think? Well, I think that the, we cite three different cases that sort of stand for the proposition that holding can be by deception, and that the, one of them is Hoog, I'm not sure, I'm not going to remember the other names right now, but they're all cited in the same part of the brief, and they all sort of, there's another case that, I believe it's the 11th circuit that's taken a different view that says it has to be backed up by a threat of force. In some sense, you don't need to reach that to get to the point of whether that hold could be or could qualify as holding by deception, and that commends the holding portion as well as representing the seizure. And there's one point that's made in the reply brief, which I think I want to respond to briefly, which is that they suggest that in order for the holding, you have to be not only deceived but confined, but I think Chapman actually addresses this directly in a provision that's actually said in the governance brief, but it states that the evidence was insufficient in that case because there was no evidence that he willfully intended through force or deception to confine the victim against her desires. So Chapman itself, which is usually sort of the fountainhead of a lot of these principles, suggests that deception is confinement. And so there's no separate requirement of confinement. If the jury could find, and I believe that they could on the most fatal fable of the government, that she was deceived, then that is sufficient to constitute the beginning of the holding, and the whole 27 minutes then sort of counts towards this appreciable period analysis. So you do agree that the hold has to be for an appreciable period? No. I think only in Stimler, the Third Circuit case has suggested it may be questionable whether that line of dicta from the Supreme Court case engraps any sort of time limitation on the statute. Other courts have agreed. And it was instructed to the jury that they had to find that the holding occurred for an appreciable period. So the question really is whether there was sufficient evidence to meet that since the jury wasn't, in fact, instructed in that way. It's important to note that the jury, I don't believe an instruction was requested that it be defined as a particular period of time. There was a provision in the instructions that said it didn't have to be for any particular period of time. The defendant asked to be stricken, and the district court kept it in. But they did not request, in some sense of suggesting that there was some, by incitement to the Cardozo case, that there was some minimum period that you must find. The appreciable period is at least 15 minutes, at least some other period of time. So the jury was left free to define that term for itself. And again, I think that the times period we're talking about here, whether you view it in totality or how you view it, fits within what courts have adopted. On sort of the 27-minute concept, the two cases we point to here are Prevoy and Pedden, both are cases which were very close in minutes. I think Prevoy was 29 minutes, Pedden was 30. And they found that that was where there was a crime that was occurring at the same time. So they're also addressing the question of an incidental crime or an internal crime. And they found that the combination of essentially driving around and committing the crime in one case of extortion and one case of rape was sufficient. And I think this is quite close, very close in minutes. And there's just no principle basis they're pointing to to suggest that 27 minutes isn't enough, but 29 minutes was. I think this clearly is within what courts have. I want to test your proposition. Your first proposition was as long as the jury is instructed that the hold must be for an appreciable period, the jury, knowing all of the facts, is entitled to make that determination as a matter of fact. The second proposition is 27 minutes is obviously an appreciable period of time. So at what point does a jury finding exceed what the Supreme Court has said must be an appreciable period of time? And is it an objective measure or from the point of view of the victim who is being held captive, essentially? To start with the second point, I understand the court's view of an objective test and not a subjective test, although I don't know that they've rejected the possibility that subjective experience matters. But because I think this court in Cunningham, which is a useful case, although it's a guidelines case, talks about the isolation and the danger that comes from being isolated from help. Obviously, that has a subjective component. But looking at it objectively, I think what I understand the courts to have done is not to instruct a jury as to what an appreciable period is, but to treat it as a legal gloss to be applied on sufficiency review, where they, same with the very factors, that they then look to decide whether perhaps because Chapman doesn't say anything about how long it has to be, and courts have struggled with this. And Cargill's was not a federal kidnapping case. Those that are federal kidnapping cases have bounded on lesser periods of time, but they've also struggled with it. Okay, so why did Chapman use the phrase, what are we supposed to take from the phrase that the government shouldn't prosecute if it all happens so quickly? Nothing, well, even a killing can happen quickly. Right, and I think that the courts have, I mean, Cargill's is a case where it was literally instantaneous holding, which is sort of a strange case of prosecution of kidnapping because it was on an open street, a person grabs somebody and sexually assaults them, and they said it could have happened instantaneously. Now that, there's a point at which clearly it's not an appreciable period because it doesn't have any of, I think one could say, sort of the indicia of the kind of confinement that raises concerns about kidnapping, and I think that's where I think Cunningham's is kind of an interesting case, which I do realize the significance of, and so I'm preparing for argument, but that it really talks about, the point is isolation, and Your Honor's point that you can be isolated in the same place you were. You don't have to be moved to be isolated, you can simply be kept in a place where you are isolated, and you can also be moved to a place, and courts have looked at these various factors to see whether this, you know, in some sense has indicia of something that is, has those concerns about that a person is being removed from helping, and put in a place where they are taken away from the possibility of getting away, or prevented from doing so. Counsel, what about Coleman's argument that we have to subtract out the amount of time inherent to other crimes that are being committed? Well, I think there's, you know, we have a couple of arguments on that point as our brief suggests. I mean, first, this court in Lowe did suggest that the question of incidental kidnappings was something that was simply irrelevant. The argument was made based on the various factors, and Howard, the only case at that point that applied them. So they made this argument, which is essentially that because the two were coterminous, that we just couldn't have a kidnapping. In that case, they were entirely coterminous. The kidnapping should be set aside, and the court said no. What if we don't read Lowe as having determined this? Exactly. We understand that not, you know, the district court raised questions about that as well. And I think on that point, you know, I think there are concerns about that that the district court raised when talking about whether to give an instruction. I think a really pretty important, which is drawing those lines between what internal crimes may have been committed, how long they would take, and how much time to subtract is extremely difficult. Actually, the court was pondering here, would I have to instruct the jury on different varieties of murder? Would I have to instruct them on robberies? The bones seem to have disappeared. Would I have to then instruct the jury on how long a typical murder or a typical, you know, theft would occur and figure out which powers, in fact, were sexual assault? It does raise a lot of questions and difficult mind-drawing exercises for courts as well. And that's one of the reasons we question whether it's an appropriate kind of test to apply, because as Your Honors will know, looking at the cases, the courts essentially wind up having to kind of guess at, well, we think the extortion in Provoi could have been done quicker. And therefore, there was additional time needed. I thought the better argument was the statute itself cannot be read to allow the carve-out. But I understand the government to say even if you carve out the six minutes, this court doesn't need to resolve that question because it's still an appreciable period of time. Your Honor, I agree. We do say in our brief that, one, the first argument in the statute doesn't call for that or doesn't provide for it. These cases have been on the books. Congress has never meant the statute at a time minimum or anything else to reflect the appreciable period of concerns. It's allowed courts to sort of go their own way with them, suggesting that there isn't a feeling that they have that this needs to be separated in this sort of precise way. But I think I was going to the secondary point that even if this court were to consider it possible as courts, because several courts have, to try to address it, I think it does create problems of line-drawing uncertainty that affects prosecutors and defendants alike. And that's why we think there's a real question about whether it makes sense to try to be making judgments or asking a jury to make judgments about questions of how long did this sexual assault take? Do we need to have an expert testimony on a typical murder? How long does that take? How many minutes do we need to subtract in order to even answer the question of whether a kidnapping occurred, or whether that's the kind of mini-trial on curricular issues that we typically would want to avoid? So since you're arguing that it is an objective test, though, and that at some point it would fail, I presume, when would it fail in your view, then? I mean, you're saying that at some point it becomes so short, I guess, that it's just it can't be appreciable objectively. But how are we supposed to sort that out? I mean, what would the government suggest? Well, I think with respect to two points, one is whether we're talking about the incidental kidnappings or the buried part or just the strict time frame. With respect to the buried test, what courts have found where it doesn't meet the standard is where the other crime entirely encompasses all the activities. I'm not remembering the name cited in the government's brief where a person is pulled from their car, taken to a ditch, and killed immediately. And the suggestion is a Tenth Circuit case leads Murphy, they just say that. There was none of the circumstances to suggest that a kidnapping occurred as opposed to literally just the commission of the crime and whatever holding is necessarily and automatically involved in the committing of that crime. Well, that person wasn't held at all from what I recall, right? Like you said, they were removed from a car and they were on an open street. The holding argument was a difficult one to make and the Tenth Circuit did not accept that that cop could be viewed as a kidnapping as well. I mean, I think if a court is to consider this and wants to look, I mean, I do think that as defense counsel suggested that the totality of the circumstances have some sort of bearing because the kinds of concerns we have with this are confinement, isolation, and other, you know, other, you look to whether the circumstances of the case present those you know, and whether the in a way that suggests that a kidnapping is a reasonable additional crime or a crime to charge. And I think here we do suggest that the court doesn't really have to grapple with the difficult parts of that because the time was such that it really matches with what courts have found even in a circumstance where there's a crime current pedant is very close, a young girl was taken from a stadium and raped and brought back, similar kind of crime was committed and the view was 30 minutes is enough. So our view is there may be line drawing to be done at some points, but we certainly believe that that period was more than sufficient to constitute kidnapping and really quite consistent with cases that we find that do find that kidnapping is an additional crime or a reasonable crime to charge and not just the underlying effect. So it doesn't really sound like you're proposing a test per se but you're just saying that here whatever the test may be it was clearly met Is that your argument? I think as your honor said, no the government's first position is that the statute doesn't really provide for such a test. The second is that as a matter of statutory construction it's problematic to apply because of all the uncertainties and it goes, like I said, to defendants as well not knowing how kidnapping statute's scope works A nice try, but the question was do we have to decide the issue and the answer is no. And now you would like us to make law in your favor the answer is still no. Correct? This is not the case that needs to adjust and that was indeed the primary argument on appeal was that any of the applicable tests that have been included and now there's several out there would be met on the circumstances of this case. But does that require us to find that the walk is included to conclude that at the end of the day there was enough of a hold here? I think the walk clearly should be included but I don't think it does our argument for appreciable period is not 21 minutes is not unappreciable under this analysis and that is not, so our argument doesn't depend on that. The walk was 6 minutes? I believe it was 6 minutes but I think that's we do think it very clearly does come in because of the reasons we talked about it would be deception to be able to start a holding and that seems to be universally held by the courts of appeals so I think that I don't see a reason since the evidence was sufficient to find that she was deceived whether it may have been hotly contested if it was sufficient to find, I think that that clearly does count. Judge Salia, do you have any questions? No, I'm all set. Let me just ask you an evidentiary question which didn't come up with Mr. Coleman's counsel what about the evidentiary issue around precluding the testimony regarding the sex work? Can you just address that because I think that in Coleman's argument it would have been really critical for the jury to understand that there may have been a reason that she had gone with him voluntarily and not testimony would have provided that reason but it was precluded? I'll describe it in general terms because a lot of this was in sealed filings but I think the view was that the district court felt rule 412 this is exactly the kind of thing that it's intended to bar which is reference to sexual history as a way of proving present behavior and the court struggled with the fact that there was an argument that the defendant was pressing repeatedly that it should come in in some fashion but I think the district court the key thing to understand about the district court's ruling in this is the district court just ultimately rejected the defendant's characterization of what that evidence really showed the key component that they focused on in their brief is the Atlantic incident we'll call it and they viewed it as happening in a particular way in which a person had sex with someone without telling them what they intended to do afterwards and then confronted them unexpectedly with the request for payment the district court just simply didn't read the testimony that way it said that's not what happened there and I think the district court's view is certainly not clearly wrong I think it's actually correct in light of the police report which suggests that the order of events was different but also the circumstances vastly different where the person was a person she knew that she was traveling with for a weekend all of the things that the defendant was arguing made this parallel were different and the court's rejection of those parallels rendered the evidence entirely divorced from the circumstances of this case more broadly that was true of all the so called before 12 evidence which referred to things like escorting and used the terms in various different ways and I think the court was rightly concerned that cherry picking the single statement that they sought to elicit that litigation prostitution on an SED basis was non-representative of what the actual interview with that particular witness was and the other evidence that it was unfair to allow it in except for the limited way that it sought to allow the defendant to bring it in Mr. Crown, what is the standard of review in the government's view concerning that evidence? It's exclusion I believe for the constitutional issue it is to develop a review and so that is what the court has to consider. We do point out and I won't rehash it because I know your honors are familiar with it that there are cases on this point and the case Brandon I think by the 8th circuit is particularly instructive because it distinguishes cases where the evidence rebuts a particular part of the affirmative case the two cases where it was allowed in, it was a specific expert testimony saying that the victim had particular characteristics emblematic of a victim of sexual assault and the courts felt that they'd be able to point to an undisputed earlier instance of sexual assault against the same victim was important to be able to say that it wasn't necessarily this defendant but where it was a more speculative connection in Brandon that they had sex with him at an earlier time and the DNA could still remain in her vagina until the time it was found that that was not a close enough fit especially essentially a speculative theory to overcome the strong values of the inherent enforcement. I think Brandon is very closely on point here and sort of helps answer the question why the mere fact that they could theoretically come up with a reason doesn't mean that it comes in and it certainly also doesn't mean that it satisfies other requirements like 45B with respect to specific instances and that kind of thing. If there's just one small point I wanted to add if I may on the two small points. First on the presentment issue, defense tries to keep saying that it's not an argument about what was before the grand jury but what they keep saying is that it wasn't before the grand jury and you can't know that because they didn't seek the stranger-free transfers and we don't know. But it's also worth noting that there was evidence of the sequence of events and the videos were, they were aware of the videos which may have been shown to the grand jury and they show among other things that her top was down when her body was dragged in. There's enough there to say that the jury, grand jury couldn't have had sufficient evidence and I don't think you can really speculate and say that we will have to assume that they did not on the record that we have and that's really the argument they have to make because there is no requirement in the law that the purpose be specified and the argument has to be that they simply couldn't have found this purpose under any circumstances. The second issue and this is because it goes to an issue in the proceedings and I just want to flag it is that this question about whether the jury could have relied on a shorter period of time and whether that could have been insufficient and we disagree that even the 12 minutes would be insufficient but even if this court were to find that some subset of this was below an appreciable period, I think we have to remember that under the Griffin line of cases specified in this case in Mahana as long as there was a sufficient ground, then I think we don't really look further and there is evidence of longer periods and the fact that the jury may have relied on another ground, the evidence arguably was insufficient under the circumstances to find that it was qualified as an appreciable period I think doesn't really arise in this case where there was clearly evidence of longer periods that was sufficient and I think under the Mahana is an important case for circuit making that classification distinction but I think the important thing here is there was sufficient evidence of longer periods of time and another reason why this court in this case is Judge Lynch has suggested doesn't need to reach those questions because we simply doesn't where there is sufficient evidence of longer periods we don't get there. Thank you. Thank you counsel. Will attorney DeMaso please come up and reintroduce yourself on the record. You have a three minute rebuttal. Chrissy DeMaso for this call. If I could start with the 412 evidence again recognizing that it's under seal so I'll be careful. I do think that that evidence was really critical and did rebut a particular portion of the government's argument and that's why it's not excluded by 412. When it comes to the district courts characterization of what the evidence showed the government refers to a report about this Atlanta incident and I just want to point out that there was not just a report there was also a proffer about what an officer would testify and that officer the proffer about that officer is much clearer about the critical sequence of events that does make that evidence relevant. And I do think that part of what matters here part of why this evidence matters so much is because we have these videos but we don't really know what transpired between these two people on this night. And whether there was consent, when there was consent, what that looked like is critical to determining how long the hold was. And the government wants to resist setting up tests and certain timelines but if you take off the six minutes of the walk is considered that there was agreement and consent to that and if you take off the 12 minutes the government says posits as sort of this inherent that may have been the part that was inherent in other offense you're down to nine minutes. So there is a question here about what is an appreciable hold and was there one here. I do want to say that the government pushed back a little bit on the government saying that it's very complicated to sort of look at what other offenses may have been involved you know here there were two specific things and they were part of the government's case you know death resulting was charged. So we know that the homicide offense is part of it and their purpose was sexual gratification which in this instance it alleged was a sexual assault. So it's built into the case, it's built into the elements. There's no, we don't have to go searching this isn't the case where we have to posit what it could have been or what could have happened. You know we have specific facts in this case that we can look at. And I don't think that you know making looking at those things in a way that would actually carve defendants out of kidnapping liability is something that causes defendants a notice problem. I also want to point out that you know the government has talked about Congress hasn't amended the statute. Well these Berry cases, Cravoy, Murphy all of these cases have been around for a long time and Congress has amended the statute since and it has not amended the statute to say that transitory or temporary or short holdings are sufficient. That's what Cardozo, that's what the D.C. court had previously held and it reversed itself. So this issue is out there and Congress could have amended the statute to say no you're all getting it wrong transitory holdings are perfectly acceptable and it hasn't. So I do think that this appreciable holding and it being separate from the time inherent in another offense is really critical because kidnapping is potentially a vastly broad statute. And where the government is talking about deceptionist confinement all of this increases the breadth of the statute. Counsel just one last question I think the government in response to your argument says it may be a broad statute in some circumstances that the facts here in the government's view are sort of typical of a kidnapping they say again looking at the evidence in light of what the jury found you lead somebody away, you put them in a car, you drive them around you can find them in the car and the person dies. In the government's view that is sort of a standard kidnapping. Can you respond to that? I think talking about what's a standard kidnapping kind of divorced from looking at what the cases are saying and why they're saying it isn't that useful of a metric. I think when you really get into the cases and look at a case like Cardozo or Berry and why they're saying what they're saying it makes it clear why they're making those rules and why they're putting the limits instead of just sort of an effort to have more than a gut check this seems like a kidnapping trying to put more parameters and understandable rules on what it is. If I could rest on my grief with the other issues. Thank you. Thank you counsel that concludes arguments in this case.